991 P.2d 804

TURNER RANCHES WATER AND SANITATION COMPANY, Appellant,

v.

The ARIZONA CORPORATION COMMISSION, an Agency of the State of Arizona, Appellee.

No. 1 CA–CC 98–0002.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 21, 1999.

As Amended Jan. 31, and Feb. 3, 2000.

Fennemore Craig, P.C. By Norman D. James and Jay L. Shapiro, Phoenix, Attorneys for Appellant.

Arizona Corporation Commission By Janice Alward, Phoenix, Attorney for Appellee.

## OPINION

· EHRLICH, Judge.

¶1 Turner Ranches Water and Sanitation Company ("Turner") appeals from Decision Number 60927 of the Arizona Corporation Commission ("Commission") modifying the rates Turner may charge its Arizona customers. For the following reasons, we vacate the decision in part and remand this matter to the Commission.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2 Turner is a public service corporation regulated by the Commission. ARIZ. CONST. ART. XV. It has two divisions: The Alpine Division provides potable water to approximately fifty customers in Apache County; the Turner Division, located in Mesa and conventionally known as the Irrigation Division, provides irrigation water to approximately 900 residential customers, 135 fire hydrants, two golf courses and the common areas in Leisure World Community.

■ ¶3 Pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 40–250(A), Turner applied to the Commission for an order approving proposed rate adjustments that would result in a 7.95 percent or 8.3 percent [1] overall rate of return.[2] A Commission hearing officer conducted a two-day evidentiary hearing in which Turner and numerous intervenors participated. The Commission then issued an Opinion and Order approving rate increases resulting in a 7.95 percent rate of return for the Irrigation Division, the recommendation of the hearing officer, and a modest increase in rates for the Alpine Division nonetheless resulting in a negative rate of return of approximately 4.1

percent. The two divisions together thus would realize an overall rate of return of 5.5 percent.

¶4 Turner seeks relief on appeal. It argues that (1) 5.5 percent is an unreasonably low rate of return resulting from the Commission's mistake or arbitrariness, (2) the Commission arbitrarily rejected Turner's treatment of deferred income taxes and unamortized investment tax credits for the purpose of establishing the rate base,[3] (3) the Commission arbitrarily declined to adjust property tax expenses to meet revenue increases in calculating Turner's rate of return and (4) the Commission arbitrarily adjusted depreciation rates for the Irrigation Division.

### DISCUSSION

#### A. Jurisdiction and Standard of Review

■ ¶5 The Commission is accorded broad discretion in its rate-making authority. *See Pine–Strawberry Improvement Ass'n v. Arizona Corp. Comm'n,* 152 Ariz. 339, 340, 732 P.2d 230, 231 (App.1986). This court's jurisdiction rests upon A.R.S. section 40–254.01(A). We may not upset the Commission's decision unless Turner, as the appellant, makes "a clear and satisfactory showing that the order is unlawful or unreasonable." A.R.S. § 40–254.01(E); *see* A.R.S. § 40–254.01(A) (court may disturb Commission's order only if it determines "upon a clear and satisfactory showing that the order is unlawful or unreasonable"); *see also Litchfield Park Service Co. (LPSCO) v. Arizona Corp. Comm'n,* 178 Ariz. 431, 434, 874 P.2d 988, 991 (App.1994) (Commission decision overturned if "arbitrary, unlawful or unsupported by substantial evidence").

---

1. Turner originally requested a 7.95 percent return, but it adjusted the figure to 8.3 percent based on adjustments proposed by the Commission's Utilities Division Staff.

2. The rate of return is the income earned by a utility after operating expenses ("net operating income") before the deduction of interest charges as divided by the fair value rate base. *See Scates v. Ariz. Corp. Comm'n,* 118 Ariz. 531, 534, 578 P.2d 612, 615 (App.1978); *Sun City Water Co. v. Ariz. Corp. Comm'n,* 26 Ariz.App. 304, 309, 547 P.2d 1104, 1109 (1976).

3. The rate base is the fair value of the company's property within the state. *See* ARIZ. CONST. ART. 15 § 14; *Scates,* 118 Ariz. at 534, 578 P.2d at 615. The Arizona Administrative Code ("A.A.C.") defines two measurements of rate base, "fair value rate base" and "original cost rate base." *See* A.A.C. R–14–2–103 (A)(3); *Litchfield Park Service Co. v. Ariz. Corp. Comm'n,* 178 Ariz. 431, 434–35, 874 P.2d 988, 991–92 (App. 1994).

## B. Rate of Return

¶ 6 The Arizona Constitution vests the Commission with the power and duty to prescribe just and reasonable rates and charges to be made and collected by public service corporations. ARIZ. CONST. ART. XV; *LPSCO*, 178 Ariz. at 434, 874 P.2d at 991. The Commission must permit a utility to realize a fair and reasonable rate of return on the owners' capital investment in the utility. *See Simms v. Round Valley Light and Power Co.*, 80 Ariz. 145, 149, 294 P.2d 378, 380 (1956); *Olsen v. Union Canal and Irrigation Co.*, 58 Ariz. 306, 318–19, 119 P.2d 569, 574 (1941).

¶ 7 Turner requested rate increases that would have resulted in an 11.61 percent rate of return for the Irrigation Division[4] and a negative 4.12 percent return for the Alpine Division. The Commission's staff essentially agreed with that request. In fact, Claudio Fernandez, a senior rate analyst in the Commission's Utilities Division, testified that Turner's "requested 8.32 percent overall rate of return is at the low end of the range."

¶ 8 Turner's reasons for requesting such divergent rate increases for each division were as follow: First, the rate increase proposed for the Alpine Division results in a 56 percent increase in rates due to the small customer base, although it still yields a negative rate of return. Second, Turner wishes to maintain its status as a Class C utility, enabling it to request additional rate increases in a shorter period of time.

¶ 9 Although it is clear from the record that the proposal contemplated an aggregate return of 7.95 percent, a rate of return that both Turner and the Commission seem to agree is reasonable, the Commission treated Turner's proposal as a request for a 7.95 percent rate of return on the Irrigation Division alone because it viewed the Alpine Division's negative rate of return as comparable to a zero rate of return. On appeal, Turner contends that, because of the Commission's erroneous assumption, its aggregate rate of return has been mistakenly if not arbitrarily

reduced by the Commission to 5.5 percent, an unreasonable rate of return. We agree with Turner.

¶ 10 In support of its Opinion and Order, the Commission insists that, because the Irrigation Division was given a 7.95 percent rate of return and because the Alpine Division's negative rate of return is in effect no rate of return, Turner's overall rate of return is 7.95 percent. It claims that Turner cannot "net" the rate of return for the Alpine and the Irrigation Divisions to calculate a 5.5 percent rate of return, a rate both parties agree is unreasonable.

¶ 11 This contention is unsound for two reasons: First, Turner's acceptance of a negative rate of return for the Alpine Division was made only in the context of its full proposal, one that would have resulted in an aggregate 7.95 percent rate of return for the company. Alpine's loss cannot be justified by the Commission separately because Turner accepted it only as part of its combined request. Any suggestion that Turner would have found Alpine's negative rate of return independently justifiable is baseless. Rather, Turner acquiesced in the Alpine Division loss only as part of a plan including at least an 11.45 percent rate of return for the Irrigation Division.

¶ 12 Second, the reasonable rate of return required by Arizona law refers to the rate of return realized by the public service corporation. *See LPSCO*, 178 Ariz. at 434, 874 P.2d at 991. The Alpine and Irrigation Divisions are owned and operated by Turner, one public service corporation, and it is the corporation as a whole that suffers from any deficiency in its overall rate of return. *See Consolidated Water Utilities, Ltd. v. Arizona Corp. Comm'n*, 178 Ariz. 478, 485, 875 P.2d 137, 144 (App.1993).

¶ 13 This record contains no support for an overall rate of return of 5.5 percent. A negative rate of return does not constitute a zero, and to "net" the rates of return of the two Turner divisions was fitting on this record. Accordingly, this case is remanded to

---

4. Turner initially requested an 11.45% rate of return. However, it and the Commission's staff subsequently agreed that 11.61% would be a

more appropriate rate of return for the Irrigation Division.

the Commission to establish a rate schedule that will produce an appropriate overall rate of return.

### C. Rejection of Turner's Proposed Treatment of Deferred Income Taxes and Investment Tax Credits

¶ 14  In 1986, the Commission issued an order establishing a rate base that incorporated a depreciation schedule of five percent per year,[5] but Turner continued to utilize a 2.98 percent depreciation rate from 1986 through 1996.  At the hearing, however, Turner's accounting witness recomputed accumulated depreciation using the five percent rate and testified in favor of a $674,277 decrease in Turner's rate base to reflect the net effect of three proposed adjustments:

| | |
|---|---|
| Accumulated Depreciation | $(859,912) |
| Deferred Income Taxes | 280,554 |
| Unamortized Investment Tax | (94,919) |
| TOTAL ADJUSTMENT | (674,277) |

¶ 15  The Commission agreed with Turner's proposed accumulated depreciation reserve, but it rejected the other two adjustments.  Turner's use of the depreciation rate was barred because it deprived customers of the financial benefit attendant to accelerated depreciation.[6]  The deferred tax asset adjustments were denied because Turner did not historically reflect deferred taxes on its books and because it had not sought approval for normalizing income taxes in ratemaking.  The Commission added that retroactive tax normalization would violate the Internal Revenue Code and "ratemaking norms."

¶ 16  Turner contends that the deferred income taxes are directly related to accumulated depreciation, that the accounting rules of the National Association of Regulatory Utility Commissioners require deferred taxes to be adjusted so that they match Turner's depreciation schedule and that Turner's customers are benefitting from a significant reduction in rate base due to the accumulated depreciation.  Because the Commission has

broad discretion, this court need not, however, reach the merits of these arguments if the Commission's decision is lawful and supported by the record.[7]

■■■ ¶ 17  Disallowance of the deferred income tax asset is essentially an accounting issue properly informed by the testimony of the accounting witnesses.  *Sandia Development Corp. v. Allen,* 86 Ariz. 40, 48, 340 P.2d 193, 198 (1959); *Transamerica Title Ins. Co.,* 124 Ariz. 428, 431, 604 P.2d 1139, 1142 (App. 1979).  In its ruling, the Commission largely adopted the conclusions of its senior rate analyst.  Fernandez said that Turner's depreciation adjustment was improper because no deferred tax was reflected by Turner's records and that the attempt to normalize the depreciation rates after the fact violated the Internal Revenue Code. He added that the use of such an asset to increase the rate base was unfair to the Turner customers who had not received the benefit of the lower capital costs that would have been realized had Turner properly used the 5 percent depreciation rate.  Because the Commission thus based its disallowance of this asset on the credible, rational testimony of a qualified expert, we will not disturb this portion of the Opinion and Order.

### D. Revenue Increases to Meet Property Tax Expenses

■ ¶ 18  Turner proposed an adjusted property tax expense to meet revenue increases anticipated in the application, and the testimony of its expert is the only evidence in the record concerning the method for adjusting the property tax expenses.  While there was no opposition from the Commission staff to Turner's calculation adjusting the property tax expense, the staff maintained that an increase in the expense was unnecessary because it did not recommend an increase in revenue.  In its Opinion and Order, the Com-

---

5.  A depreciation rate is defined in Arizona Administrative Code R14–2–102(A).  *See LPSCO,* 178 Ariz. at 439, 874 P.2d at 996.

6.  . A rapid depreciation reduces the base rate in a shorter time period thereby lowering the amount of revenue necessary to achieve the rate of return.

7.  We will not address the Commission's decision not to recognize the downward adjustment for unamortized investment tax credits because that adjustment inured to Turner's benefit.

mission allowed increased revenues, but it did not adjust the property tax expenses; in fact, it did not even refer to these expenses. We agree with Turner that this failure by the Commission was arbitrary. While the Commission argues to accept its staff's testimony over Turner's evidence, the staff offered no contradiction of Turner's expert. The staff merely proposed a tax expense based on the most recent property tax bill without regard to increased revenues. That expense, however, is certain to be understated given the revenue increase authorized by the Opinion and Order. The Commission acted arbitrarily in disregarding the tax expenses attendant to the revenue increase.

¶ 19 Turner's expert apparently applied the Arizona Department of Revenue's formula for calculating the increased property tax, and the Commission did not take issue with this methodology. On remand, the Commission must adjust the property tax expenses consistent with this decision.

### E. Depreciation Rates

¶ 20 The Commission's staff recommended changing the depreciation rates for the Irrigation Division property from five percent to 3.32 percent.[8] Because Turner did not seek any change in rates, it opposed the staff's recommendation. The Commission adopted the staff's recommendation, and Turner seeks relief.

¶ 21 Turner argues that the staff recommendation, based as it was on studies of other water company depreciation rates, does not provide a sound basis for calculating an appropriate depreciation rate for the Irrigation Division's property. It argues that the depreciation rates can only be determined by analyzing the useful life of Turner's own facilities and equipment. It adds that the staff studies used potable water systems rather than irrigation water systems, that the staff used obsolete studies, that the facilities and equipment among water utilities vary so significantly that it is impossible to assess one utility's depreciation rate based upon that of another, that the staff failed to

analyze any of the studies upon which it relied and that the staff improperly averaged several depreciation studies of a single facility.

¶ 22 While Turner's arguments suggest that the Commission may not have made the wisest decision, we must uphold any decision that is supported by the evidence. The Commission heard testimony from its senior rate analyst that the recommended depreciation rates were based on weighted averages culled from studies conducted by numerous utilities and that the 30–year life expectancy reflected in the 3.32 percent rate was more realistic than the 20–year life expectancy reflected in the five percent rate.

¶ 23 Turner then asserts that the Commission impermissibly shifted the burden of proof to Turner because Turner did not seek to change its depreciation rate but was forced to overcome evidence that it should be changed. We disagree. Not only is the Commission not precluded from addressing relevant factors in a rate-making procedure simply because an applicant does not raise them in the first instance, *LPSCO*, 178 Ariz. at 438, 874 P.2d at 995, Turner put its depreciation rate at issue when it proposed adjusting its books to reflect the discrepancy between the five percent rate addressed in the 1986 Order and the 2.98 percent rate Turner had been using for tax purposes.

### CONCLUSION

¶ 24 For the foregoing reasons, Decision Number 60927 of the Arizona Corporation Commission is vacated in part. The matter is remanded to the Commission to amend its Opinion and Order consistent with this court's decision.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge, and REBECCA WHITE BERCH, Judge.

---

8. Turner did not request a change in the authorized five percent depreciation rate approved by the Commission in 1986. However, as noted earlier, Turner had been applying a lower depreciation rate.