294 P.2d 378

Mit SIMMS, William T. Brooks and Timothy D. Parkman, constiuting The Corporation Commission of the State of Arizona, Appellants,

v.

**ROUND VALLEY LIGHT & POWER COMPANY, Appellee.**

No. 5960.

Supreme Court of Arizona.
Feb. 21, 1956.

Rehearing Denied June 12, 1956.

Robert Morrison, Atty. Gen., Donald O. Corbitt and William T. Willey, Assts. to the Atty. Gen., for appellants. On the brief are James E. Hunter, Phoenix, and Robert C. Stubbs, Tucson.

Platt & Greer, St. Johns, Jennings, Strouss, Salmon & Trask, Irving A. Jennings and Wallace O. Tanner, Phoenix, for appellee.

Evo De Concini, Tucson, Fennemore, Craig, Allen & Bledsoe, Walter E. Craig, Ryley, Carlock & Ralston, Joseph P. Ralston, Snell & Wilmer, Edward Jacobson, A. B. Spector, amici curiae.

WINDES, Justice.

Appellant, the Corporation Commission of Arizona, entered upon an inquiry concerning the rates being charged by the appellee, Round Valley Light and Power Company, a public utility corporation. The appellant will be designated hereinafter as the commission, and the appellee as the company. A hearing was had and the commission entered an order requiring the company to reduce its rates. Thereafter, upon petition of the company, this order was suspended and another hearing held, after which the commission entered its second order requiring reduction in rates but changed the original order in some respects as will hereinafter appear. The company brought an action against the commission under the provisions of section 69–249, A. C.A.1939. The trial court entered judgment setting aside the commission's final order and the commission appeals.

The problems presented are, first, whether the commission in its decision fixing the reduced rates is required to find the fair value of the company's properties being used to serve the public as a basis for the calculation of reasonable rates; and second, if the law requires the commission to find such value, whether and to what extent the commission must, in finding the same, consider the present reproduction cost less depreciation.

The accounting and engineering staff of the commission made an investigation, including an analysis of the books of the company. As a result of such investigation, the members of the staff at the first hearing presented evidence showing the original book costs of the property less accrued depreciation and customer advances to be $114,158. To this figure was added certain items not disputed herein such as materials and supplies, operating expense reserve, deposits, etc., which produced a total value of $128,884. It is clear that the original order did not take into consideration the reproduction cost of the property but essentially adopted the book cost less depreciation in finding the rate base.

On the second hearing the staff presented evidence showing original book cost of the property less accrued depreciation and customer advances to be $110,526, thereafter making certain additions not herein contested producing a total value of $127,017. This latter figure was recommended by the staff as the proper rate base.

On the rehearing the company submitted evidence concerning the value of the plant and started with the figure of $114,158 presented by the staff on the first hearing as the book cost of the property less depreciation and customer advances. To that figure it added $15,773 as a correction of the depreciation reserve allowed by the staff and added the items not herein contested, and thereby produced an historical cost of $147,238. To this the company added $28,136, which latter item according to the order of the commission was derived from "Handy's Manual" used to trend historical costs upward to compensate for the difference between the historical and present costs of construction. The company by this calculation recommended a rate base in the sum of these latter items, or $175,374. Thus, it appears that the company presented to the commission evidence, which it asked the commission to accept, of a value for rate-making purposes of $175,374 based upon reconstruction costs less depreciation.

All of the foregoing evidence submitted to the commission on both the first and second hearings was introduced in evidence in the trial court. In addition to this evidence, the company in court presented further evidence consisting principally of an engineer's testimony of an actual detailed appraisement of the property. He testified that in his opinion the reproduction cost less observed depreciation was $193,947. After a slight adjustment the court's judgment recites this latter figure should be

$192,678. After adding items not contested, the court found that the total value was $205,070; that the commission found 7.28 percent as a fair rate of return in the first order; but that it did not apply such rate to the fair value of the company's property. The court concluded as a matter of law that had the commission found the fair value, the rate of return of 7.28 percent in the first order would not have been unreasonable. In fact, the commission in its second order allowed a rate of return of 7.01 percent.

■ It is elementary that a public utility subject to regulation and fixing of rates is entitled to realize a fair and reasonable profit from its operation in the service of the public. In establishing the rates that will produce the requisite return, a base figure must be found—the rate base. The troublesome questions arise when we approach the method used by the rate-making body in establishing this rate base. In the early case of Smyth v. Ames, 1898, 169 U.S. 466, 18 S.Ct. 418, 434, 42 L.Ed. 819, the Supreme Court of the United States in testing a legislative act fixing railroad rates ruled in effect that a rate-making body could not, without violating the due process and equal protection clauses of the Fourteenth Amendment to the United States constitution, require the company to commit its property to public service without allowing a fair and reasonable reward and the compensation to be allowed the company should likewise be reasonable from the standpoint of the public interest. The Court recognized that how fair compensation was to be determined would always be an embarrassing question, and then proceeded to state:

"We hold, however, that the basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for the convenience of the public. And, in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property. What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it for the use of a public highway than the services rendered by it are reasonably worth."

150

In State of Missouri ex rel. Southwestern Bell Telephone Co. v. Public Service Commission, 1923, 262 U.S. 276, 43 S.Ct. 544, 546, 67 L.Ed. 981, 31 A.L.R. 807, the Supreme Court struck down a rate base established by the public service commission of Missouri for the reason that it was founded principally upon original book costs and no consideration was given to reproduction costs. The Court said:

"It is impossible to ascertain what will amount to a fair return upon properties devoted to public service, without giving consideration to the cost of labor, supplies, etc., at the time the investigation is made."

In that case Justices Brandeis and Holmes concurred in the result but contended the rate base should be established by a finding of what amount was prudently invested in the enterprise.

Subsequent to announcing the test for arriving at a rate base in Smyth v. Ames, supra, the Supreme Court of the United States struggled with the difficult problem of determining the validity of rates that would be reasonable from the standpoint of both the company and public to be served but not until its decision in Federal Power Commission v. Hope Natural Gas Co., 1944, 320 U.S. 591, 64 S.Ct. 281, 288, 88 L.Ed. 333, did the Court in principle repudiate Smyth v. Ames, supra. In the Hope case the Court, in testing the reasonableness of rates fixed by the Federal Power Commission under the Natural Gas Act, 15 U.S.C.A. § 717 et seq., after holding that Congress had provided no formula by which just and reasonable rates were to be determined, ruled that it was the final result reached and not the method used in reaching the result that was controlling and that it was unimportant to "determine the various permissible ways in which any rate base on which the return is computed might be arrived at."

The commission contends that its decision in fixing the company's rates can be said to be just and reasonable under the law as announced in the Hope case and, thus tested, the rates are lawful and should not be disturbed. Our constitution provides that the commission shall prescribe just and reasonable rates, Arizona Constitution, Article 15, section 3, and says that to aid it in the proper discharge of its duties the commission shall "ascertain the fair value of the property within the state of every public service corporation * * *." Arizona Constitution, Article 15, section 14. This court in construing these provisions of our constitution in the case of State v. Tucson Gas, Electric Light & Power Co., 1914, 15 Ariz. 294, 138 P. 781, 784, said:

"In order that the Corporation Commission might act intelligently, justly, and fairly between the public service corporations doing business in the state and the general public, section 14 was written into the Constitution * *. The 'fair value of the property' of

public service corporations is the recognized basis upon which rates and charges for services rendered should be made, and it is made the duty of the Commission to ascertain such value, not for legislative use, but for its own use, in arriving at just and reasonable rates and charges, and to that end the public service corporations are required to furnish the Commission all the assistance in their power."

The foregoing pronouncement was subsequently approved in Ethington v. Wright, 1948, 66 Ariz. 382, 189 P.2d 209. While the interpretation concerning rate base was dicta in these cases, we approve the same. It is clear, therefore, that under our constitution as interpreted by this court, the commission is required to find the fair value of the company's property and use such finding as a rate base for the purpose of calculating what are just and reasonable rates. The Hope case cannot be used by the commission. To do so would violate our constitution. The statute under consideration in that case prescribed no formula for establishing a rate base. While our constitution does not establish a formula for arriving at fair value, it does require such value to be found and used as the base in fixing rates. The reasonableness and justness of the rates must be related to this finding of fair value.

■ The commission argues that fair value as used in the constitution may be considered as synonymous with prudent investment. This theory we cannot approve.

Fair value means the value of properties at the time of inquiry, State of Missouri ex rel. Southwestern Bell Telephone Co. v. Public Service Commission, supra, whereas prudent investment relates to a value at the time of investment. Justice Brandeis' concurring opinion in State of Missouri ex rel. Southwestern Bell Telephone Co. v. Public Service Commission, supra. The former allows the increase or decrease in cost of construction to influence the rates, whereas the latter makes no such allowance. Irrespective of the merits, if any, of the prudent investment theory, because of our constitution the commission cannot use it as a guide in establishing a rate base.

■ The final order of the commission recites that the average rate of depreciation which the company had been taking was 4.37 percent; that in accordance with the recommendation of the staff this should be revised to allow an average of 3.28 percent; that the company, in calculating its recommended rate base of $175,374, adjusted its depreciation reserve back to the inception of the company at the lower rate of depreciation, thereby reducing the depreciation reserve theretofore accumulated and resulting in an enlarged rate base to the extent of $15,773. For this reason the commission deducted this latter item as not properly in the rate base. Its action in this respect was justified. The company having accumulated this reserve at the higher rate and having charged it to operating expense, this item of $15,773 could be legitimately deducted.

There was evidence that the company is operating a mercantile business independent of its activities as a public utility. In operating this mercantile business, it used land, building, and fixtures, the total value of which was included in arriving at the plant value. Considering that some adjustment should be made by allocating some value to the portion of the property not used in rendering public service but used in connection with the mercantile business, the staff recommended a deduction of $2,621 from the rate base. The commission in its order stated that the company in its recommended base made no deduction for this item but held that some deduction should be made. How much the commission deducted for this latter item the commission did not say. Some subtraction was properly made for the portion of the property being used for purposes other than service to the public as a utility. After making these deductions the commission's order recites:

"In the instant proceedings, we think neither the Staff's original cost rate base $127,017.08 nor the Respondent's 'Trended Value' rate base of $175,-374.27 to reflect present day inflated prices, are just and equitable for the determination of fair value for rate making purposes; and a fair figure lies somewhere between these limitations.

Conclusions and Order

"After full consideration and review of the evidence and testimony submitted upon the record, the Commission finds the fair value of the Company for rate making purposes in the sum of $136,667.00. The Commission further finds that after adjustments herein directed, including related taxes, the net operating income of the Utility Department pro-forma was $16,279.99 as set forth in detail on Table I appended hereto and made a part of this Order. A net operating income in the amount of $16,279.99 indicates a return of 11.91% on a rate base of $136,-667.00 which the Commission finds to be excessive and otherwise beyond the reasonable limits of a fair return. The Company, therefore, is hereby ordered to reduce its rates in the amount of $10,350.00 per year which the Commission finds will produce a net operating income of $9,577.42 per year after adjustments for related taxes, and constitutes a return of 7.01% on a fair value of $136,667.00 which we deem to be within the limits of a fair return."

It will be observed that the Commission after making the foregoing adjustments of the company's recommended rate base decided that neither the staff's recommendation based principally upon the historical costs nor the company's based principally upon the reproduction costs as established by trending upward the historical costs was a fair value for rate-making purposes. Assuming the commission deducted $2,621 recommended by the staff for allocation of

value for the proportionate part used for the mercantile business, it made a further deduction of approximately $20,000 from the company's recommended reproduction cost which was the equivalent of adding approximately $9,600 to the staff's historical cost, and allowed a rate of return on this figure of 7.01 percent. The problem thus presented is whether the trial court was justified in setting this order aside.

██ One of the most difficult tasks for a rate-making body is to properly value utility properties to establish a base that when related to the fixed rate of return will be just and reasonable to both the company and the consuming public. The methods used to reach this result have been productive of much litigation and debate. In the absence of an admitted change in material and labor costs since construction, the original costs less depreciation of the physical plant plus working capital and other items of value necessary to render the service is recognized as a fair guide. McCardle v. Indianapolis Water Co., 1926, 272 U.S. 400, 47 S.Ct. 144, 71 L.Ed. 316; Los Angeles Gas & Electric Corp. v. Railroad Commission, 1933, 289 U.S. 287, 53 S.Ct. 637, 77 L.Ed. 1180. With admitted or proven substantial change in the cost of materials and labor, the original cost cannot be accepted as the exclusive measure but appropriate consideration must be given this factor of increased costs. State of Missouri ex rel. Southwestern Bell Telephone Co. v. Public Service Commission, supra; Los Angeles Gas & Electric Corp. v. Railroad Commission, supra. This is necessary for the reason that the company is entitled to a reasonable return upon the fair value of its properties at the time the rate is fixed. State of Missouri ex rel. Southwestern Bell Telephone Co. v. Public Service Commission, supra; Willcox v. Consolidated Gas Co., 1909, 212 U.S. 19, 29 S.Ct. 192, 53 L.Ed. 382.

██ The difficult question with which the courts have struggled is to determine how much consideration must be given this factor in order to bring the finding of value within the sphere of legality. It is well recognized that any evidence of what is the present reconstruction cost of an existing plant is at best opinion evidence and carries the weakness of some inaccuracy. It is based upon estimates. The commission is entitled to reasonably determine the probative force of these estimates and is not compelled to find its value upon mere speculation. Railroad Commission of California v. Pacific Gas & Electric Company, 1937, 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 319. The commission would have no right to close its mind to legitimate evidence related to current values. Central Maine Power Co. v. Public Utilities Commission, 1954, 150 Me. 257, 109 A.2d 512. Consequently, the courts which hold that this factor of reproduction cost, if supported by legitimate evidence, must be allowed to influence the rate base in some degree generally rule that the rate-making body does

not have to accept these estimates at full value. Georgia Railway & Power Co. v. Railroad Commission, 1923, 262 U.S. 625, 43 S.Ct. 680, 67 L.Ed. 1144; Chesapeake & Potomac Telephone Co. of Baltimore City v. Public Service Commission, 1952, 201 Md. 170, 93 A.2d 249. No set, rigid formula is required to be used. Only a reasonable judgment considering all relevant factors is required. Los Angeles Gas & Electric Corp. v. Railroad Commission, supra.

The commission in exercising its rate-making power of necessity has a range of legislative discretion and so long as that discretion is not abused, the court cannot substitute its judgment as to what is fair value or a just and reasonable rate. Louisville & N. R. Co. v. Garrett, 1913, 231 U.S. 298, 34 S.Ct. 48, 58 L.Ed. 229. The legislative duty and power to fix just and reasonable rates having been by the constitution delegated exclusively to the corporation commission, the courts cannot disturb the commission's ultimate conclusion or findings of facts in arriving at such conclusion when the same is supported by substantial evidence, is not arbitrary or is not otherwise unlawful. Illinois Central Railroad Co. v. Illinois Commerce Commission, 1944, 387 Ill. 256, 56 N.E.2d 432; Central Maine Power Co. v. Public Utilities Commission, supra.

This rule is not in conflict with decisions of this court to the effect that on appeal from an order of the corporation commission the court may render an independent judgment on the question of public convenience. Corporation Commission of Arizona v. People's Freight Line, Inc., 1932, 41 Ariz. 158, 16 P.2d 420; Corporation Commission v. Southern Pacific Co., 1940, 55 Ariz. 173, 99 P.2d 702; Metropolitan Lines, Inc., v. Brooks, 1950, 70 Ariz. 344, 220 P.2d 480. These cases do not involve an express and specific constitutional grant of power to the administrative body.

The company when before the commission submitted a reproduction cost less accrued depreciation plus working capital etc., resulting in a present fair value of $175,374. Included in this figure were two improper items as heretofore related. Likewise, the items added by the company to its estimated value exceeded the staff's additions by $815. In court the company submitted additional evidence presented in the form of an appraisement less observed depreciation plus working capital, etc., resulting in a current fair value of $206,338. The court weighed all this evidence and decided the fair value of the property was $205,070. The court may not weigh the evidence and make a finding of fair value. By the constitution this function is delegated exclusively to the commission. The legislature has the right to grant judicial review in the form of trial de novo as provided in section 69–249, A.C.A.1939, but when the court is testing the validity of rate-making power given to the commission under the constitution, the scope of that review cannot operate to permit the court to usurp, directly.

or indirectly, the commission's power thus given. The court may consider the evidence only for the purpose of determining whether the commission in its finding of fair value acted unreasonably in that its finding has no substantial support in the evidence, is arbitrary or otherwise unlawful. Had the appraisement been before the commission, it would not have been compelled to adopt its figures considering that there was other evidence warranting a lower figure.

■ The company is no longer generating its own electricity but purchases the same from the Rural Electrification Administration, an agency of the Federal government, at a cost much less than when generating its own. The diesel plant theretofore used for generation is used merely as a standby plant. The engineer who made the appraisement, in calculating a reproduction cost less depreciation of this plant of $50,828, assumed the necessity of reconstructing an identical plant to the one now existing but testified that if one were reconstructing a standby plant today, it would not be of the same character. In other words, because of mechanical advances the existing plant carries a possible element of obsolescence. This certainly is a matter the commission would have the right to consider in arriving at present fair value. Chesapeake & Potomac Telephone Co. of Baltimore City v. Public Service Commission, supra.

If the commission had adopted as a base the company's recommended value of $175,-374 and deducted the two items not legitimately contained therein, the allowable recommended rate base of the company could have been approximately $156,980, and the annual earnings of $9,577 would have given the company slightly in excess of six percent return on its own figures, reduced by legitimate deductions.

■ The company contends the commission in arriving at just and reasonable rates first determined what the company should be allowed to earn in order to maintain a sound financial position, attract necessary additions to capital and pay a fair return on common equity; and second, having thus established the amount the company should be allowed to earn for such purposes, it proceeded to adjust the rate of return to any rate base. If this be true, it would be an illegal method of establishing a rate base. The standard for establishing a rate base must be the fair value of the property and not what the commission might believe was a fair rate of return on common equity. It is true that the amount the company is allowed to earn at 7.01 percent on the established rate base is approximately the amount required to pay 7.5 percent on common equity. This fact and the fact the commission contends that it was not required to give weight to the factor of reproduction cost would warrant the inference that, possibly, this contention of the company is correct. We do not feel war-

ranted, however, in condemning the commission's order on inference when the face of the order indicates otherwise.

Counsel for the company in their brief say that it is not known by what formula the commission reached the rate base. In the trial court counsel said this figure was reached by taking the historical cost less depreciation plus six or seven thousand dollars as an adjustment for reproduction costs. This adjustment was actually approximately $9,600.

We are unable to say and the trial court cannot be allowed to say that the commission's finding of fair value is without substantial support in the evidence or arbitrary. The judgment must be reversed, and it is so ordered.

LA PRADE, C. J., and UDALL, PHELPS and STRUCKMEYER, JJ., concur.