8 P.3d 396

**U.S. WEST COMMUNICATIONS, INC., a Colorado corporation, Plaintiff–Appellant,**

**v.**

**The ARIZONA CORPORATION COMMISSION, an agency of the State of Arizona; Renz D. Jennings, Marcia Weeks and Carl J. Kunasek, as members of the Arizona Corporation Commission; and Brooks Fiber Communications of**

---

Tucson, Inc., a Delaware corporation; MFS Intelenet of Arizona, Inc.; TCG Phoenix; Electric Lightwave, Inc.; MCI Metro Access Transmission Services, Inc.; AT & T Communications of the Mountain States, Inc.; GST Net (AZ), Inc.; American Communications Services of Pima County, Inc.; Sprint Communications Company, L.P.; Cox Arizona Telcom, Inc.; Winstar Wireless of Arizona, Inc., Defendants–Appellees.

No. 1 CA–CV 98–0672.

Court of Appeals of Arizona,
Division 1, Department E.

Aug. 29, 2000.

Review Granted Feb. 13, 2001.

U.S. West Law Department by Thomas Dethlefs, Denver, CO, and Fennemore Craig by Timothy Berg and Janice Procter–Murphy, Phoenix, Attorneys for Appellant.

Janet F. Wagner, Janice M. Alward, Phoenix, Attorneys for the Arizona Corporation Commission.

Lewis and Roca LLP by Patricia K. Norris, Thomas H. Campbell, W. Todd Coleman, Phoenix, and Thomas F. O'Neil III, Mark B. Ehrlich, Washington, D.C., Attorneys for Appellees MCI Metro Access Transmission Services, Inc., Brooks Fiber Communications of Tucson, Inc., and MFS Intelenet of Arizona, Inc.

Gallagher & Kennedy, P.A. by Michael M. Grant, Todd C. Wiley, Phoenix, Attorneys for Appellee Electric Lightwave, Inc.

Ridge & Isaacson, P.C. by Steven J. Duffy, Phoenix, Attorneys for Appellee Sprint Communications Company, L.P.

AT & T Law Department by Maria Arias–Chapleau, Richard S. Wolters, Denver, CO, and Osborne Maledon, P.A. by Andrew D. Hurwitz, Joan S. Burke,, Phoenix Attorneys for Appellees AT & T Communications of the Mountain States, Inc. and TCG Phoenix.

J. Jeffrey Mayhook, Vancouver, WA, and Nancy M. Coomer, Tucson, Attorneys for Appellee GST Net (AZ), Inc.

Brown & Bain, P.A. by Lex J. Smith, Michael W. Patten, Lynne C. Adams, Phoenix, Attorneys for Appellees American Communications Services of Pima County, Inc., Cox Arizona Telecom, Inc., and WinStar Wireless of Arizona, Inc.

O'Connor, Cavanagh, Molloy, Jones by Russell E. Jones and D. Michael Mandig, Tucson, Attorneys for Amicus Curiae Trico Electric Cooperative, Inc.

Arizona Center for Law in the Public Interest by Timothy M. Hogan, Phoenix, Attorneys for Amicus Curiae Arizona Consumers Council.

## OPINION

RYAN, Judge.

¶ 1 The advent of competition has dramatically altered the local telecommunications services monopoly held since Arizona statehood by U.S. West Communications, Inc. ("US West") and its predecessor. This new environment for providing telecommunications service has generated numerous legal disputes as Arizona develops a regulatory scheme that addresses competition. The primary question we must answer in this appeal is whether the Arizona Constitution requires the Arizona Corporation Commission ("Commission") to ascertain the fair value of a public service corporation's property within the state for purposes of setting the rates the corporation may charge for competitive telecommunications services. We hold that it does.

## BACKGROUND

¶ 2 US West and its predecessor have had a monopoly in the Arizona market for local telecommunications service since 1912. But in 1995, the Arizona Corporation Commission adopted Arizona Administrative Code ("A.A.C.") rules R14–2–1101 through R14–2–

1115 (the "Rules"). These Rules permit telecommunications providers to apply for a certificate of convenience and necessity ("CC & N"),[1] which would grant them the right to provide competitive local and intraLATA[2] telecommunications service in what formerly was US West's exclusive market. *See* A.A.C. R14–2–1103.

¶ 3 In 1996, Congress opened local telephone service markets nationwide to competition by enacting the Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56 (codified in scattered sections of 47 U.S.C.) (the "Federal Act"). Under the Federal Act, no state law "may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a) (Supp. II 1996).

■ ¶ 4 Eleven competitive telecommunications companies (the "Competitors") applied to the Commission for competitive CC & Ns in order to enter the Arizona local exchange and intraLATA markets. US West intervened in each application. *See U S West Communications, Inc. v. Arizona Corp. Comm'n,* 295 Ariz. Adv. Rep. 41, 42, ¶¶ 5–6, 197 Ariz. 16, 19, ¶¶ 5–6, 3 P.3d 936, 939 (App.1999). The Commission granted competitive CC & Ns to each of the Competitors without inquiring into the value of their investments in property held within the state ("fair value rate base") and determining a

reasonable rate of return on those investments, or imposing a carrier-of-last-resort obligation on them.[3] The Commission approved proposed tariffs[4] for the Competitors establishing "rates[5] and charges which are not less than the Applicant's total service long-run incremental costs of providing the competitive services approved herein." This language mirrored the text of the Commission's rules for competitive telecommunications service. *See* A.A.C. R14–2–1109(A). In contrast, the rates and charges for identical services provided by US West were determined by applications and public hearings directed at ascertaining US West's fair value rate base. Rates and charges were then fixed at a level intended to provide a reasonable rate of return on US West's investment.

¶ 5 Dissatisfied with the Commission's decisions, US West appealed by filing separate complaints in superior court naming the Commission and the Competitors as defendants. The complaints alleged that the Commission's grant of the CC & Ns violated the equal protection clauses of the Federal and Arizona Constitutions, as well as two other provisions of the Arizona Constitution: article 15, section 3, which requires the Commission to set just and reasonable rates for services provided by public service corporations; and article 15, section 14, which requires the Commission to ascertain the fair

1. All public service corporations other than railroads must have a CC & N from the Commission to operate in Arizona. *See* Ariz.Rev.Stat. Ann. § 40–281 (1996).

2. "LATA" means one of the geographic "local access and transport areas" established as a result of the AT & T divestiture. *See United States v. Western Elec. Co.,* 569 F.Supp. 1057, 1062 n. 6 (D.D.C.1983), *aff'd sub nom. California v. United States,* 464 U.S. 1013, 104 S.Ct. 542, 78 L.Ed.2d 719 (mem.); *United States v. Western Elec. Co.,* 569 F.Supp. 990, 993–94 nn. 4, 9 (D.D.C.1983). " 'IntraLATA long-distance service' means all long-distance service originating and terminating in the same LATA, as defined by the F.C.C." A.A.C. R14–2–1001(12); *see id.* R14–2–1001(13).

3. The carrier-of-last-resort obligation attaches to a public service corporation serving customers in its service area under a regulated monopoly. *Cf. James P. Paul Water Co. v. Arizona Corp. Comm'n,* 137 Ariz. 426, 429–30, 671 P.2d 404, 407–08 (1983) (noting that one of the obligations of a public service corporation is to provide

adequate service to all qualified customers within its service area). US West is presently required to serve customers in Arizona for whom the cost is so high that, in a competitive market, US West will not recover a fair rate of return. *See U S West Communications,* 3 P.3d 936, 295 Ariz. Adv. Rep. at 42, ¶ 12.

4. "Tariffs" are "[t]he documents filed with the Commission which list the services and products offered by a telecommunications company and which set forth the terms and conditions and a schedule of rates and charges for those services and products." A.A.C. R14–2–1102(14).

5. The provider's rates and charges are set forth in a tariff, not in the CC & N. *See id.* The rate set forth in the tariff is actually the maximum allowable rate which then "may be discounted down to the total service long-run incremental cost of providing the service." *Id.* R14–2–1102(11); *see also id.* R14–2–1104(A)(3).

value of property owned by public service corporations when setting such rates.[6] The superior court consolidated US West's complaints into a single proceeding. That court ultimately rejected US West's constitutional arguments, granted motions to dismiss its complaints, and entered judgment for the defendants.

¶ 6 US West appealed from the judgment. This court has jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12–2101(B)(1994).

## DISCUSSION

¶ 7 This is US West's second appeal arising from the Rules. The first appeal challenged the Commission's promulgation of the Rules. *See U S West Communications, Inc.*, 295 Ariz. Adv. Rep. at 41, ¶ 2, 197 Ariz. at 18, ¶ 2, 3 P.3d at 938. There, US West argued that the Rules violated its "contract" with the state and were improperly promulgated because the Commission had failed to obtain the approval of the Attorney General as required by the Arizona Administrative Procedures Act. *See id.* We held that the Rules did not violate any contractual right of US West but that some of them did require review by the Attorney General under A.R.S. section 41–1044. *See id.* at 45, ¶ 39, 197 Ariz. at 26, ¶ 39, 3 P.3d at 946.

¶ 8 In this second appeal, US West contests the manner in which the Commission applied the Rules to the Competitors. US West claims that the Commission violated the Arizona Constitution because it failed to require fair value rate base determinations from the Competitors before approving their rates and charges. In addition, US West claims that the Commission has violated the equal protection clauses of the Federal and Arizona Constitutions because it has treated US West differently from the Competitors both in failing to subject the Competitors to fair value rate base determinations and also by not subjecting the Competitors to the same carrier-of-last-resort obligations to which it holds US West.

¶ 9 The defendants answer US West's claims in four ways. First, some defendants argue that US West's claims amount to an impermissible collateral attack on the Rules. Second, some defendants argue that US West lacks standing to pursue its claims. Third, all of the defendants argue that this appeal is not ripe for adjudication. And, finally, all defendants argue that the Arizona Constitution does not require the Commission to determine the fair value of property they hold within the state before setting rates or, if it does, the Federal Act preempts the state constitution in this regard. We address US West's claims and the defendants' arguments in turn.

### A. US West's Complaints As A Collateral Attack On The Rules

¶ 10 Some of the defendants argue that this appeal is an impermissible collateral attack on the Commission's rules governing competitive telecommunications service. In essence, these defendants argue that US West is attacking the facial validity of rules that it challenged in the prior appeal. *Cf. id.* at 41, ¶¶ 2–5, 197 Ariz. at 18, ¶¶ 2–5, 3 P.3d at 938. But the issues in that appeal concerned whether the Commission unlawfully promulgated the Rules because it failed to obtain the Attorney General's approval, and whether certain of the Rules violated a contractual right asserted by US West. *See id.* at 41, ¶ 2, 197 Ariz. at 18, ¶ 2, 3 P.3d at 938. In light of our prior decision, US West presumably would be barred under the doctrine of *res judicata* from raising the same issues again. *See, e.g., Pima County Assessor v. Arizona State Bd. of Equalization*, 195 Ariz. 329, 334–35, ¶¶ 20–21, 987 P.2d 815, 820–21 (1999).

¶ 11 The issues we face here, however, are different. US West is not challenging the manner in which the Commission promulgated the Rules, the legality of the Rules in terms of US West's supposed contractual rights, or the facial validity of the Rules. Instead, US West argues that the Commis-

---

6. All telecommunications companies operating within Arizona are public service corporations. *See* Ariz. Const. art. 15, § 2 ("All corporations other than municipal engaged ... in transmitting messages or furnishing public telegraph or telephone service ... shall be deemed public service corporations.").

**214**

sion applied the rules unlawfully because, in failing to require fair value rate base determinations from the Competitors, it violated express provisions of the Arizona Constitution. In addition, US West argues that the Commission acted unconstitutionally by treating the Competitors differently than it treated US West. Thus, the validity of the Commission's decisions was "directly placed in issue" by the results of its actions in implementing the Rules, not by its promulgation of them. *Cf. JV–132324 v. Superior Court,* 181 Ariz. 337, 344, 890 P.2d 632, 639 (1995) (holding that the validity of an administrative order is properly before the court when it has been directly placed in issue). Therefore, US West's appeal is not an impermissible collateral attack on the Rules.

*B. US West's Standing*

▮▮ ¶ 12 Some of the defendants assert that US West lacks standing to prosecute its claims both here and in the superior court. However, standing is not a jurisdictional requirement under the Arizona Constitution, which has no counterpart to the case or controversy requirement in the Federal Constitution. *See Sears v. Hull,* 192 Ariz. 65, 71, ¶ 24, 961 P.2d 1013, 1019 (1998). Nevertheless, Arizona courts normally impose standing requirements as a matter of judicial restraint to ensure that their decisions are not moot or merely advisory, "and that the issues will be fully developed by true adversaries." *Armory Park Neighborhood Ass'n v. Episcopal Community Servs.,* 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985). A plaintiff may gain standing by alleging an injury resulting from the defendant's putatively unconstitutional conduct. *Cf. Sears,* 192 Ariz. at 70, ¶ 23, 961 P.2d at 1018.

¶ 13 US West intervened in the administrative proceedings resulting from the Commission's grant of CC & Ns to the Competitors, and it appears to have vigorously litigated the issues before us both in those proceedings and in superior court. The harm that could result to US West because of the Commission's decisions exempting the Competitors from fair value rate base scrutiny or carrier-of-last-resort obligations, to the extent that these decisions are un-

constitutional as alleged, is not abstract. The Competitors are now recruiting customers and competing for local and intra-LATA telecommunications business unconstrained by the procedures and obligations with which US West must comply. Thus, the Commission's decisions directly and profoundly affect US West's ability to compete for a market share of its former monopoly. Therefore, we conclude that US West has standing to pursue its claims. *Cf. City of Scottsdale v. McDowell Mountain Irrigation & Drainage Dist.,* 107 Ariz. 117, 122, 483 P.2d 532, 537 (1971) (holding that the City had standing to challenge the formation of a water improvement district that might impede the City's expansion); *City of Tucson v. Woods,* 191 Ariz. 523, 526, 959 P.2d 394, 397 (1997) (holding that the City had standing to challenge the constitutionality of a statute allowing certain communities within the same county as the City to incorporate as towns without the City's consent).

*C. US West's Constitutional Issues*

▮▮ ¶ 14 US West raises two constitutional issues. First, US West contends that the Arizona Constitution requires the Commission to determine the Competitors' fair value rate base before it approves rates and charges for their services. Second, US West contends that the Commission has treated it differently than it treated the Competitors, both in exempting the Competitors from fair value rate base determinations and by exempting them from the carrier-of-last-resort obligations that it imposes on US West. US West argues that such disparate treatment offends the equal protection clauses of the Federal and Arizona Constitutions. In response, the defendants initially argue that US West's constitutional issues are not ripe for adjudication because US West has not applied for a competitive CC & N and thus has not exhausted its administrative remedies.

▮▮ ¶ 15 The ripeness doctrine prevents a court from rendering a judgment or opinion on a situation that may never occur. *See Arizona Downs v. Turf Paradise, Inc.,* 140 Ariz. 438, 444, 682 P.2d 443, 449 (1984).

"The court ordinarily will not decide as to future or contingent rights, but will wait until the event giving rise to rights has happened, or, in other words, until rights have become fixed under an existing state of facts." *Moore v. Bolin,* 70 Ariz. 354, 357, 220 P.2d 850, 852 (1950). A controversy is not ripe for review if a party has failed to exhaust administrative remedies. *See U S West Communications, Inc.,* 3 P.3d 936, 295 Ariz. Adv. Rep. at 42, ¶ 9; *Arizona Downs,* 140 Ariz. at 445, 682 P.2d at 450.

¶ 16 To determine whether US West's constitutional issues are ripe we must first determine whether the Commission acted unconstitutionally in not requiring a fair value rate base determination for the Competitors. If the Commission did violate the constitution in setting rates for the Competitors, then US West's issues are ripe for review because it has no administrative remedy to pursue. Any application by US West for a competitive CC & N asking for the same unconstitutional treatment afforded the Competitors would be futile. Because we conclude that the Commission acted unconstitutionally when it exempted the Competitors from the fair value rate base requirement, US West's constitutional claim with respect to the fair value rate base determination is ripe for review. However, we reach a different result with respect to US West's carrier-of-last-resort claim.

### 1. Application of Arizona's Fair Value Determination Clause

¶ 17 US West argues that article 15, sections 3 and 14, of the Arizona Constitution require the Commission in all cases to make fair value rate base determinations and fix rates and charges based on those determinations before it can approve an initial tariff. Article 15, section 3, charges the Commission with the duty to set "just and reasonable" rates, but does not provide a mechanism for doing so. However, article 15, section 14, provides that the Commission "*shall,* to aid it in the proper discharge of its duties, ascer-

tain the fair value of the property within the State of every public service corporation doing business therein." (Emphasis added). US West relies on the mandatory language of section 14 and the decisions in *Simms v. Round Valley Light & Power Co.,* 80 Ariz. 145, 294 P.2d 378 (1956), and *Scates v. Arizona Corporation Commission,* 118 Ariz. 531, 578 P.2d 612 (1978), to argue that the Commission must conduct fair value rate base hearings before fixing initial rates for the Competitors.

¶ 18 Telecommunications companies operating within Arizona, such as the Competitors, are public service corporations. *See* Ariz. Const. art. 15, § 2; A.A.C. R14-2-1102(15). All public service corporations operate under the terms of their tariffs, filed with the Commission, which set forth rates and charges. The Commission's practice in the past has been to hold hearings to determine the fair value rate base of a public service corporation's property within Arizona, and then set a just and reasonable rate of return for its investment in the state on the basis of that information.[7] *See Scates,* 118 Ariz. at 533-34, 578 P.2d at 614-15. US West's tariffs include rates and charges that were determined at hearings that established a fair value rate base and a just and reasonable rate of return, as contemplated by article 15, sections 3 and 14, of the Arizona Constitution.

¶ 19 In contrast, the Commission established initial rates for the Competitors without first holding hearings to determine a fair value rate base. Instead, the Commission required the Competitors only to state their current and maximum rates and charges in tariffs filed with the Commission at least thirty days before providing service. Thereafter, the Competitors could raise their rates up to the maximum stated in the tariff by giving the Commission written notice, but still without any fair value rate base determination. *See* A.A.C. R14-2-1109, R14-2-1110.

7. "The rate of return is the income earned by a utility after operating expenses ('net operating income') before the deduction of interest charges as divided by the fair value rate base." *Turner Ranches Water & Sanitation Co. v. Arizona Corp.*

*Comm'n,* 195 Ariz. 574, 579 n. 2, 991 P.2d 804, 809 n. 2 (1999). Setting rates in this fashion is commonly referred to as "rate-of-return" regulation.

**216**

¶ 20 In *Scates,* this court held that a public service corporation cannot raise rates without first determining a fair value rate base. 118 Ariz. at 534, 578 P.2d at 615 (holding that the Commission "is required by our Constitution to ascertain the value of a utility's property within the State in setting just and reasonable rates"). Similarly, the *Simms* court stated that the Arizona Constitution requires the Commission "to find the fair value of the company's property and use such finding as a rate base for the purpose of calculating what are just and reasonable rates." 80 Ariz. at 151, 294 P.2d at 382. But the trial court distinguished this case from *Simms* and *Scates* because they "do not address the circumstances of a competitive market," and because "there is no precedent for requiring a fair value determination in a competitive market."

¶ 21 Both the Commission and the Competitors attempt to defend the trial court's ruling by noting that our constitution does not require a monopolistic utility structure. *See Mountain States Tel. & Tel. Co. v. Arizona Corp. Comm'n,* 132 Ariz. 109, 114–15, 644 P.2d 263, 268–69 (1982). However, in their view, fair value rate base determinations are needed only in a monopolistic environment. Thus, defendants argue that the fair value clause in the constitution does not apply to the Competitors because they are not monopolies.

¶ 22 For its part, the Commission also contends that the fair value clause is not mandatory because its force is tempered by the framer's statement that fair value determinations are intended to "aid" the Commission in setting rates. In the Commission's view, the constitution prescribes fair value as a "a tool" for the Commission to use in instances where it deems that tool to be helpful. Taken together, the defendants' arguments frame this critical question: Does the Arizona Constitution require the Commission to determine fair value rate bases before it sets rates and charges for competitive public service corporations? We answer this question affirmatively because our supreme court has held that the determination of a fair value rate base is mandatory. *See Simms,* 80 Ariz. at 151, 294 P.2d at 382;

*State v. Tucson Gas, Elec. Light & Power Co.,* 15 Ariz. 294, 303, 138 P. 781, 785 (1914).

¶ 23 Our supreme court has consistently treated fair value determinations for public service corporations as constitutionally required. *See Simms,* 80 Ariz. at 151, 294 P.2d at 382 ("[U]nder our constitution as interpreted by this court, the commission is required to find the fair value of the company's property and use such finding as a rate base for the purpose of calculating what are just and reasonable rates."); *Tucson Gas, Elec. Light & Power Co.,* 15 Ariz. at 303, 138 P. at 785 ("The 'fair value of the property' of public service corporations is the recognized basis upon which rates and charges for services rendered should be made, and it is made the duty of the commission to ascertain such value, not for legislative use, but for its own use, in arriving at just and reasonable rates and charges."). But the supreme court did not rest its decisions on the existence of the companies involved as monopolies, but rather on their existence as public service corporations. *See Simms,* 80 Ariz. at 149–50, 294 P.2d at 381–82; *Tucson Gas, Elec. Light & Power Co.,* 15 Ariz. at 307, 138 P. at 786. Thus, because the Competitors are public service corporations, the Commission's treatment of the constitutional fair value clause as discretionary rather than mandatory as it applies to the Competitors runs contrary to constitutional precedent.

¶ 24 We also reject an interpretation of the fair value clause as discretionary because it disregards the nature of the constitutional imperative. Although the framers' expression of their purpose in imposing the fair value clause may be unusual, it does not abrogate the mandatory nature of the fair value clause itself. If fair value determinations were optional, it would have been pointless to include the fair value clause in the constitution in the first instance.

¶ 25 The framers may not have envisioned a competitive telecommunications market when they drafted article 15 of the Arizona Constitution. Fair value rate base determinations, and perhaps rate setting itself, may be anachronistic processes in a competitive market. Nevertheless, given that our supreme court has consistently held that the

constitution requires fair value rate base determinations for public service corporations, but has never restricted such language to monopolies, the trial court erroneously disregarded constitutional authority in distinguishing this case from *Simms* and *Scates* on the ground that the legislative or regulatory scheme for the telecommunications market in Arizona has changed from monopolistic to competitive. We hold that the Arizona Constitution requires the Commission to determine a fair value rate base for all public service corporations before setting rates, unless and until the fair value determination requirement contained in article 15, section 14, is amended by the people of this state.

¶ 26 The defendants raise several additional arguments to explain why they should be exempt from the fair value clause. First, they claim that fair value rate base determinations were impossible because the Competitors had not yet concluded their interconnection agreements with US West. This point has more to do with the timing of the CC & N application and filing of the initial tariff than it does with the constitutionally required rate base determination itself. The "impossibility" of calculating the fair value rate base resolves itself as the interconnection agreements are concluded. Neither the state constitution nor the Rules required the Commission to set rates for the Competitors before issuing them CC & Ns. Accordingly, the Commission could have issued CC & Ns first, with rate determinations and tariff approvals to follow after these agreements were concluded and it became possible to ascertain the fair value rate base.

¶ 27 Second, the Commission claims that even monopolies are not required to undergo a fair value analysis when the Commission initially sets rates, yet it cites no examples or authority to support such a claim. Even if the Commission were correct, however, its claim is inconsistent with our holding that article 15, section 14, requires fair value rate base determinations when the Commission sets rates and charges for a public service corporation.[8]

¶ 28 The defendants also contend that the rate base determination violates the Federal Act because it is so complex and costly that it impedes the Competitors' entry into the Arizona telecommunications market. However, increased regulatory complexity alone does not offend the Federal Act unless it will "prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a).[9] Nothing in this record supports the claim that fair value rate base determinations are so costly or complex that they prohibit any of the Competitors from entering the Arizona telecommunications market.

¶ 29 Finally, the defendants offer a related argument, essentially contending that the Federal Act preempts rate base determinations. This argument derives from subsection 253(d) of the Federal Act, which directs the Federal Communications Commission to preempt the enforcement of any state law that violates subsection 253(a). The argument is moot in light of our conclusion that fair value rate base determinations do not offend subsection 253(a). Moreover, the legislative history of the Federal Act supports our conclusion on this issue. An earlier draft of the Federal Act contained a provision, stricken before congressional passage, that expressly prohibited rate-of-return regulation by the states. Indeed, Senator Kerrey remarked:

> The underlying legislation also would have preempted the States from using rate-of-return regulation and forced them to use

8. Our conclusion here does not alter our view that, in certain limited situations, the Commission may set interim rates and automatic adjustment clauses to rates without considering the public service corporation's fair value rate base. *See Scates*, 118 Ariz. at 535, 578 P.2d at 616.

9. The parties use the word "barrier" which is not found in the text of 47 U.S.C. section 253(a). The title of section 253, "Removal of barriers to entry," invites a false analogy to federal anti-trust statutes, which prohibit regulatory costs and delays that are so burdensome as to amount to unlawful barriers to entry. *See Southern Pac. Communications Co. v. American Tel. & Tel. Co.*, 740 F.2d 980, 1001 (D.C.Cir.1984). Prohibiting entry into a market is distinct from, and more severe than, merely making entry more burdensome.

218

price caps or alternative rate regulation. Under the conference report, States continue to regulate local phone rates as they choose.

142 Cong. Rec. S697 (daily ed. Feb. 1, 1996). Thus, congressional intent is clear; the Federal Act does not preempt Arizona law requiring a rate base determination in order to set rates for telecommunications services.

¶ 30 Because article 15, section 14, of the Arizona Constitution required the Commission to set rates according to fair value rate base calculations, and because the Federal Act does not preempt this requirement, we conclude that the trial court erred in dismissing US West's appeals from the Commission's failure to apply the fair value clause to the Competitors. As a result, we need not address US West's equal protection claim as it relates to this failure.

2. Carrier–Of–Last–Resort Obligations

■ ¶ 31 US West also complains that the Commission's actions have denied it equal protection because it must continue to bear the burden of being a carrier-of-last-resort while the Competitors do not. This equal protection argument arises out of the Commission's supposedly unequal treatment in requiring such obligations of US West but not of the Competitors. We conclude that the "event giving rise to rights," *Moore*, 70 Ariz. at 357, 220 P.2d at 852, has not yet occurred and thus US West's equal protection claim in this regard is not yet ripe for review.

¶ 32 The Competitors attained their competitive classifications by applying for them under Arizona Administrative Code Rule R14–2–1103. Telecommunications carriers may be classified as either competitive or non-competitive depending on the kind of services they offer. *See* A.A.C. R14–2–1103, R14–2–1108(A). But the Rules do not classify US West separately from any other public service corporation offering telecommunications service. Indeed, the rules contemplate that telecommunications service providers holding non-competitive CC & Ns, such as US West, will petition the Commission for competitive CC & Ns for appropriate ser-

vices or groups of services. *See* A.A.C. R14–2–1108(A).

¶ 33 However, US West has not yet applied for a competitive CC & N. Given that the Rules are not facially discriminatory, US West's equal protection claim can ripen only if the Commission approves its petition for a competitive CC & N in a manner that treats US West differently from the Competitors. As it stands, US West's equal protection claim rests on disparate treatment that has yet to occur.

**Conclusion**

¶ 34 We hold that the Arizona Constitution requires the Commission to determine fair value rate bases for all public service corporations in Arizona prior to setting their rates and charges. Because US West has yet to apply for a competitive CC & N of its own, we further hold that its equal protection claim based on disparate treatment with respect to carrier-of-last-resort obligations is not yet ripe for review. Accordingly, we reverse the dismissal of US West's claim that the Commission's actions violated article 15, section 14, of the Arizona Constitution, and we affirm the dismissal of US West's equal protection claims. We remand this matter for further proceedings consistent with this opinion.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, and SARAH D. GRANT, Judge.

**NOTE:** The Honorable Sarah D. Grant, Retired, is authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 20 and Administrative order No.2000–15.