34 P.3d 351

US WEST COMMUNICATIONS, INC.,
a Colorado corporation, Plaintiff–
Appellant,

v.

The ARIZONA CORPORATION COM-
MISSION, an agency of the State of
Arizona; Renz D. Jennings, Marcia
Weeks, and Carl J. Kunasek, as mem-
bers of the Arizona Corporation Com-
mission; and Brooks Fiber Communi-
cations of Tucson, Inc., a Delaware
corporation; MFS Intelenet of Arizona,
Inc.; TCG Phoenix; Electric Light-
wave, Inc.; MCI Metro Access Trans-
mission Communications of the Moun-
tain States, Inc.; GST Net (AZ), Inc.;
American Communications Services of
Pima County, Inc.; Sprint Communica-
tions Company, L.P.; Cox Wireless of
Arizona, Inc., Defendants–Appellees.

No. CV–00–0379–PR.

Supreme Court of Arizona,
En Banc.

Nov. 15, 2001.

Fennemore Craig by Timothy Berg, Janice Procter–Murphy, Theresa Dwyer, Phoenix, Attorneys for Appellant U.S. West Communications, Inc.

Janet F. Wagner, Janice M. Alward, Phoenix, Attorneys for the Arizona Corp. Comm'n.

Lewis & Roca, L.L.P. by Thomas H. Campbell, W. Todd Coleman, Phoenix, Thomas F. O'Neil III, Mark B. Ehrlich, William Single IV, Washington DC, Attorneys for Appellees MCI Metro Access Transmission Servs., Inc., Brooks Fiber Communications of Tucson, Inc. and MFS Intelenet of Arizona, Inc.

Gallagher & Kennedy, P.A. by Michael M. Grant, Todd C. Wiley, Phoenix, Attorneys for Appellee Electric Lightwave, Inc.

Ridge & Isaacson, P.C. by Steven J. Duffy, Phoenix, Attorneys for Appellee Sprint Communications Co., L.P.

Osborn Maledon, P.A. by Andrew D. Hurwitz, Joan S. Burke, Phoenix, Attorneys for Appellees AT & T Communications of the Mountain States and TCG Phoenix.

Roshka, Heyman & DeWulf, P.L.C. by Michael W. Patten, (formerly with Brown & Bain, P.A.), Phoenix, Attorneys for Appellees American Communications Servs. of Pima County, Inc. and Cox Arizona Telcom, Inc.

Arizona Center for Law in the Public Interest by Timothy M. Hogan, Phoenix, Attorney for Amicus Curiae Arizona Consumers Council.

Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C. by Russell E. Jones, D. Michael Mandig, Tucson, Attorneys for Amicus Curiae Trico Elec. Coop., Inc.

## OPINION

ZLAKET, Chief Justice.

¶1 We are called upon to address the following issues: (1) whether the Arizona Corporation Commission is constitutionally required to ascertain the fair value of a public service corporation's in-state property when setting rates; (2) if so, the extent to which such a fair value determination must be utilized in the rate-setting process; and (3) whether federal law preempts and precludes the application of this constitutional mandate to corporations in the telecommunications sector. We have jurisdiction pursuant to article VI, § 5(3) of the Arizona Constitution.

## FACTS AND PROCEDURAL HISTORY

¶2 Until very recently, U.S. West and its predecessor occupied the status of a regulated monopoly in the Arizona telecommunications market. In setting U.S. West's rates, the Arizona Corporation Commission customarily determined the fair value of the company's in-state property and calculated a reasonable rate of return on those assets.

¶3 In 1995, the corporation commission adopted rules opening the door to competition in local service and interLATA[1] markets. *See* Competitive Telecommunications Rules, Ariz. Admin. Code §§ R14–2–1101 to –1115. The following year, Congress enacted the Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56 (codified at

---

1. "LATA" is an acronym for "Local Access and Transport Area." LATAs were formed as a result of the Bell monopoly breakup. *See United States v. Western Elec. Co., Inc.,* 569 F.Supp. 990, 993 n. 9 (D.D.C.1983). An "interLATA" transmission originates in one LATA and terminates in another. *Id.* at 994.

47 U.S.C. § 151, et. seq.) to "promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." *See* S. Res. 652, 104th Cong., 110 Stat. 56 (1996). This federal legislation bars any state law that would "prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a) (2001 Supp.).

¶ 4 In 1996 and 1997, competitive local exchange carriers (CLECs) filed applications with the corporation commission for certificates of convenience and necessity, allowing them to provide both local and interLATA service throughout Arizona. The commission issued the certificates, concluding that to do so was in the public interest. No effort was made to determine the fair value of any Arizona-based property of these eleven CLECs.

¶ 5 U.S. West filed separate actions, arguing that article XV of the Arizona Constitution compels a fair value finding with respect to each CLEC. Following consolidation, the trial court declared the fair value clause inapplicable because the CLECs were engaged in a competitive, rather than a monopolistic, environment. The judge also ruled that the fair value requirement would constitute a barrier to the telecommunications market in violation of the foregoing federal law. Thus, she granted pending motions to dismiss.

¶ 6 The court of appeals reversed, holding that article XV, section 14 of the Arizona Constitution requires the corporation commission to determine the fair value of each CLEC's Arizona property. *US West Communications, Inc. v. Ariz. Corp. Comm'n*, 198 Ariz. 208, 218, 8 P.3d 396, 406, ¶ 34 (App.2000).

> We ... reject an interpretation of the fair value clause as discretionary because it disregards the nature of the constitutional imperative. Although the framers' expression of their purpose in imposing the fair value clause may be unusual, it does not abrogate the mandatory nature of the fair value clause itself. If fair value determina-

tions were optional, it would have been pointless to include the fair value clause in the constitution in the first instance.

> The framers may not have envisioned a competitive telecommunications market when they drafted article 15 of the Arizona Constitution. Fair value rate base determinations, and perhaps rate setting itself, may be anachronistic processes in a competitive market. Nevertheless, given that our supreme court has consistently held that the constitution requires fair value rate base determinations for public service corporations, but has never restricted such language to monopolies, the trial court erroneously disregarded constitutional authority in distinguishing this case from *Simms* and *Scates* ....

*Id.* at 216–17, 8 P.3d at 404–05, ¶¶ 24–25. The appellate court also reversed the judge's finding that a fair value determination would violate the federal Telecommunications Act of 1996. *Id.* at 217–18, 8 P.3d at 405–06, ¶¶ 28–30.

█ ¶ 7 We granted review, owing to the statewide importance of these issues. Because they involve pure questions of law, we review them de novo. *In re Hall v. Lalli*, 194 Ariz. 54, 57, 977 P.2d 776, 779, ¶ 5 (1999).

## ANALYSIS

### A. The Arizona Constitution

¶ 8 The corporation commission's duties are outlined in article XV of the Arizona Constitution. Section 3 states that the commission "shall have full power to, and shall, prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the State for service rendered therein." Section 14 requires that "[t]he Corporation Commission shall, to aid it in the proper discharge of its duties, ascertain the fair value of the property within the State of every public service corporation doing business therein."

█ ¶ 9 The commission and the CLECs claim that the court of appeals erred in mandating a fair value determination for each competitor. Asserting that the constitutional

language in question was intended to govern a monopolistic market and is an anachronism in today's competitive environment, they argue that a fair value determination lacks utility and should no longer be required.

¶ 10 Unambiguous constitutional language, however, is to be given its plain meaning and effect. "Nothing is more firmly settled than under ordinary circumstances, where there is involved no ambiguity or absurdity, a statutory or constitutional provision requires no interpretation." *Adams v. Bolin,* 74 Ariz. 269, 273, 247 P.2d 617, 620 (1952); *see also Pinetop–Lakeside Sanitary Dist. v. Ferguson,* 129 Ariz. 300, 302, 630 P.2d 1032, 1034 (1981) ("[W]here a constitutional provision is clear, no judicial construction is required or proper."). Furthermore, the Arizona Constitution plainly dictates how it is to be applied: "The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise." Ariz. Const. art. II, § 32.

¶ 11 Section 14 states that the corporation commission *shall* make a fair value determination. This is an imperative. The commission is charged with an affirmative duty to act. The constitutional provision in question does not condition its mandate upon the presence of a monopolistic market, nor does it say or imply anything about the existence of discretion in the commission.

¶ 12 Should they think it wise, our citizens are free to amend the Arizona Constitution to reflect changed circumstances in the telecommunications industry. It is noteworthy, however, that the people have rejected such an amendment three times, most recently just a year ago.[2] Because neither this court nor the corporation commission possesses the power to ignore plain constitutional language, we hold that a determination of fair value is necessary with respect to a public service corporation.

¶ 13 But what is to be done with such a finding? In the past, fair value has been the factor by which a reasonable rate of return was multiplied to yield, with the addition of operating expenses, the total revenue that a corporation could earn. *See, e.g., Scates v. Ariz. Corp. Comm'n,* 118 Ariz. 531, 533–34, 578 P.2d 612, 614–15 (App.1978). That revenue figure was then used to set rates.

¶ 14 Our cases have historically supported such a method. Two years after the Arizona Constitution was adopted, this court stated:

> The "fair value of the property" of public service corporations is the recognized basis upon which rates and charges for services rendered should be made, and it is made the duty of the Commission to ascertain such value, not for legislative use, but for its own use, in arriving at just and reasonable rates and charges....

*State v. Tucson Gas, Elec. Light & Power Co.,* 15 Ariz. 294, 303, 138 P. 781, 785 (1914). Thirty-four years later, in *Ethington v. Wright,* 66 Ariz. 382, 391–92, 189 P.2d 209, 215–16 (1948), we affirmed the need to use the fair value determination in setting just and reasonable rates.

¶ 15 In *Simms v. Round Valley Light & Power Co.,* 80 Ariz. 145, 294 P.2d 378 (1956), a public service corporation appealed the commission's decision to set rates based on information obtained from a review of the company's books. We relied on *Tucson Gas* and *Ethington* for the proposition that "under our constitution as interpreted by this court, the commission is required to find the fair value of the company's property and use such finding as a rate base for the purpose of calculating what are just and reasonable rates." *Id.* at 151, 294 P.2d at 382.

¶ 16 This ruling has been followed in subsequent cases. *See, e.g., Ariz. Corp. Comm'n. v. Ariz. Pub. Serv. Co.,* 113 Ariz. 368, 370, 555 P.2d 326, 328 (1976) (same holding); *Ariz. Corp. Comm'n. v. Ariz. Water Co.,* 85 Ariz. 198, 202, 335 P.2d 412, 414 (1959) ("[T]he Commission must establish the rate base on the basis of fair value and that alone.").

¶ 17 But while the constitution clearly requires the Arizona Corporation Commission to perform a fair value determination,

**2.** The voters defeated proposed amendments to the fair value clause in the 1984, 1988, and 2000 elections.

only our jurisprudence dictates that this finding be plugged into a rigid formula as part of the rate-setting process. Neither section 3 nor section 14 of the constitution requires the corporation commission to use fair value as the *exclusive* "rate basis." Those provisions merely mandate that the commission "ascertain the fair value of the property within the State of every public service corporation doing business therein" and "prescribe just and reasonable classifications to be used and just and reasonable rates and charges. . . ." Ariz. Const. art. XV, §§ 3, 14.

¶ 18 As we have seen, a line of cases nearly as old as the state itself has sustained the traditional formulaic approach. The commission and the CLECs correctly point out, however, that those decisions were rendered during a time of monopolistic utility markets. In such a setting, where rates were determined by giving the utility a reasonable return on its Arizona property, the fair value requirement was essential.

¶ 19 We still believe that when a monopoly exists, the rate-of-return method is proper. Today, however, we must consider our case law interpreting the constitution against a backdrop of competition. In such a climate, there is no reason to rigidly link the fair value determination to the establishment of rates. We agree that our previous cases establishing fair value as the exclusive rate base are inappropriate for application in a competitive environment.

¶ 20 It is important to note what we do not decide today. We do not hold that a fair value determination should play *no* role in the establishment of rates, or that it can simply be ignored. On the contrary, section 14 mandates that the corporation commission determine fair value "to aid it in the proper discharge of its duties." One of the commission's primary duties is to set rates. *See* Ariz. Const. art. XV, § 3.

¶ 21 The fair value of a public service corporation's Arizona property may be important in determining and avoiding the harsh extremes of the rate spectrum. Set too low, rates can result in a confiscatory taking of a company's property. Set too high, they can lead to state-sanctioned price gouging. Thus, fair value, in conjunction with other information, may be used to insure that both the corporation and the consumer are treated fairly. In this and any other fashion that the corporation commission deems appropriate, the fair value determination should be considered. The commission has broad discretion, however, to determine the weight to be given this factor in any particular case.

### B. Federal Telecommunications Act

■ ¶ 22 We must also decide whether the federal Telecommunications Act of 1996 prohibits the commission from determining the fair value of potential competitors' in-state property as part of the rate-setting process. It is undisputed that the legislation in question was enacted to initiate competition in the historically monopolistic telecommunications industry. To insure that states did not interfere, Congress declared that "[n]o state or local statute or regulation . . . may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). However, this section does not prevent states from regulating telecommunications on a "competitively neutral basis." *Id.* § 253(b).

■ ¶ 23 Obviously, if Arizona's fair value requirement conflicts with the federal act, the latter preempts and precludes application of this constitutional provision. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). Whenever possible, however, we construe the Arizona Constitution to avoid conflict with the United States Constitution and federal statutes. *Ruiz v. Hull*, 191 Ariz. 441, 448, 957 P.2d 984, 991, ¶ 24 (1998).

¶ 24 We have previously indicated that while the commission is constitutionally required to ascertain the fair value of the CLECs' Arizona property, it has considerable discretion in a competitive environment to determine how such information should be

used. Thus, the issue before us is whether the fair value requirement alone acts to "prohibit or have the effect of prohibiting" the entry of competition in the telecommunications industry. *See* 47 U.S.C. § 253(a). We think not.

¶ 25 Fair value can be determined in an impartial manner. Such objective data may prove helpful in the rate-setting process, though not necessarily as the sole factor to be assessed. We recognize that some competitors may have little, if any, physical property in Arizona. The commission can consider this in setting rates. In any event, following a fair value determination the corporation commission is free to decide the "just and reasonable rates" that may be charged by a CLEC to whom a certificate of convenience and necessity has been granted. We fail to see how such a procedure impedes telecommunications competition in Arizona.

¶ 26 We therefore hold that the fair value determination required by article XV, § 14 of the Arizona Constitution is neither in conflict with, nor preempted by, the federal Telecommunications Act of 1996.

### CONCLUSION

¶ 27 We reverse the judgment of the superior court, vacate the opinion of the court of appeals, and remand the matter for further proceedings consistent with this opinion.

CONCURRING: CHARLES E. JONES, Vice Chief Justice, STANLEY G. FELDMAN, Justice, FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice.