IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

HOPI TRIBE, *Appellant*,

*v.*

ARIZONA CORPORATION COMMISSION, *Appellee*.
_____

ARIZONA PUBLIC SERVICE COMPANY, RESIDENTIAL UTILITY
CONSUMER OFFICE, *Intervenors*.

No. 1 CA-CC 22-0001

FILED 12-28-2023
_____

Appeal from the Arizona Corporation Commission
No.  E-01345A-19-0236

**DISMISSED**
_____

COUNSEL

Hopi Tribe Office of General Counsel, Kykotsmovi
By Frederick K. Lomayesva
*Counsel for Appellant*

Arizona Corporation Commission, Phoenix
By Robin R. Mitchell, Maureen A. Scott, Wesley C. Van Cleve,
Kathryn M. Ust
*Counsel for Appellee*

Gibson, Dunn, & Crutcher LLP, Washington, DC
By Thomas G. Hungar, Matthew S. Rozen
*Co-Counsel for Intervenor APS*

Snell & Wilmer LLP, Phoenix
By Amanda Z. Weaver
*Co-Counsel for Intervenor APS*

Radix Law PLC, Scottsdale
By Andrew M. Kvesic
*Co-Counsel for Intervenor RUCO*

Residential Utility Consumer Office, Phoenix
By Daniel W. Pozefsky
*Co-Counsel for Intervenor RUCO*

---

## OPINION

Judge Jennifer M. Perkins delivered the opinion of the Court, in which Vice Chief Judge Randall M. Howe and Judge Daniel J. Kiley joined.

---

**P E R K I N S**, Judge:

¶1        The Hopi Tribe ("Tribe") appeals from the Arizona Corporation Commission's ("Commission") Decision 78317 ("Decision") ordering Arizona Public Service Company ("APS") to pay the Tribe $1 million directly and fund electrification projects within the Hopi reservation in an amount "up to $1.25 million" as part of APS's Coal Community Transition assistance ("transition assistance"). The Tribe challenges the amount of transition assistance ordered, arguing that the Commission did not support its Decision with substantial evidence, deviated from an established policy, unlawfully discriminated against the Tribe, and wrongfully denied an application for rehearing. We do not have jurisdiction to consider any of the challenges to the transition assistance because that portion of the Decision was not final. We therefore dismiss the Tribe's appeal.

**FACTS AND PROCEDURAL BACKGROUND**

¶2  APS is a public service corporation that jointly owns the three coal-fired power plants at issue. The Navajo Generating Station ("Navajo Station") is located outside of Page, Arizona, on land leased from the Navajo Nation ("Nation"). The Navajo Station began operating in 1974, and was the largest coal-fired power plant in the western United States. It is jointly owned by several entities, including APS and Tucson Electric Power ("Tucson Power"). The Navajo Station received much of its coal from Peabody Energy's Kayenta Coal Mine ("Kayenta Mine"). Kayenta Mine is located on Nation land, but some of the coal is derived from a "joint use area" shared with the Tribe.

¶3  Four Corners Power Plant ("Four Corners") is a coal-fired power plant located in northwestern New Mexico on land leased from the Nation. It began operating in 1963, and was jointly owned by multiple entities including APS and Tucson Power before 2012. *See Ariz. Pub. Serv. Co. v. Ariz. Corp. Comm'n*, 255 Ariz. 16, 18, ¶ 3 (App. 2023).

¶4  Cholla Power Plant ("Cholla") is located just south of the Nation's reservation in north-central Arizona. It began operating in 1962 and is jointly owned, but APS is Cholla's majority owner and operator.

¶5  On April 1, 2019, Tucson Power filed a rate application. *See In re Application of Tucson Elec. Power*, Docket No. E-01933A-19-0028, Decision 77856 at 11 (Ariz. C.C. Dec. 31, 2020). During that case, questions arose about what to do to assist communities impacted by the transition away from coal-based energy production. *Id.* at 171. In response, the Commission ordered Commission staff "to open a generic docket involving all Arizona electric utilities to address the impact of the closure of fossil-based electric generation on the Tribal communities." *Id.*

¶6  On October 1, 2019, APS filed a Notice of Intent to File a Rate Case. Navajo Station closed the next month. The Nation and the Tribe then moved to intervene in the 2019 APS case. The Administrative Law Judge granted both motions. As in the 2019 Tucson Power case, both parties introduced arguments about the effect of the decision to move away from coal-fired generation.

¶7  During its 2019 rate case, APS requested approval of its 2020 Demand Side Management Plan. *In re Application of Ariz. Pub. Serv. Co.*, Docket No. E-01345A-19-0088, Decision 77763 at 1 (Ariz. C.C. Oct. 2, 2020). In response, the Commission ordered APS to develop a "proposal and budget to implement energy efficiency projects" with communities

impacted by the closure of coal-fired power plants that APS owns or operates. *Id.* at 39. After this order, APS and the Nation entered a memorandum of understanding ("MOU") that included proposed cash and technical transition assistance. The Tribe was not a party to the MOU.

**¶8**        After the January 2021 hearing on APS's 2019 rate case concluded, APS announced a "Clean Energy Commitment" to end all coal-fired generation by 2031. *In re Application of Ariz. Pub. Serv. Co.*, Docket No. E-01345A-19-0236, Decision 78317 at 104 (Ariz. C.C. Nov. 9, 2021). Based on this announcement, Four Corners is scheduled to close in 2031, and Cholla's closure was sped up to April 2025.

**¶9**        After APS's announcement, the Commission considered the ALJ's recommendation regarding funding within the Hopi reservation and issued the Decision. The Commission determined that it could decide some issues related to transition assistance and it need not await the conclusion of the generic docket. The Commission ordered APS to pay the Tribe $1 million and to "spend up to $1.25 million toward electrification projects" on the Tribe's land. The Tribe petitioned for rehearing, which the Commission denied by operation of law. *See* A.R.S. § 40-253(A) ("If the commission does not grant the application within twenty days, it is deemed denied."). The Tribe then filed this appeal, but agreed to stay the appeal while the Commission considered transition assistance issues in the generic docket. APS and Tucson Power filed new rate cases in 2022 in which each proposed additional transition assistance for the Tribe.

**¶10**        The Commission has since closed the generic docket without deciding whether to award the Tribe additional transition assistance. Instead, the Commission left the issue to be "addressed in the pending [APS] and [Tucson Power] [2022] rate cases." The Tribe moved to intervene in both 2022 rate cases. We take judicial notice of the procedural orders granting the Tribe's motions to intervene in both rate cases, and the decision in Tucson Power's rate case because they are public records. *See* Ariz. R. Evid. 201; *In re Application of Ariz. Pub. Serv. Co.*, Docket No. E-01345A-22-0144, E000026408 at 3 (Ariz. C.C. May 4, 2023); *In re Application of Tucson Elec. Power Co.*, Docket No. E-01933A-22-0107, E000023655 at 8 (Ariz. C.C. Jan. 20, 2023); *In re Application of Tucson Elec. Power Co.*, Docket No. E-01933A-22-0107, Decision 79065 at 128 (Ariz. C.C. Aug. 25, 2023).

**¶11**        In August 2023, the Commission resolved Tucson Power's transition assistance obligation to the Tribe without awarding the Tribe additional transition assistance. The Commission found that "while [Tucson Power] may use shareholder funds for [transition assistance],

ratepayer funding of [transition assistance] is not justified." *In re Application of Tucson Elec. Power Co.*, Docket No. E-01933A-22-0107, Decision 79065 at 128 (Ariz. C.C. Aug. 25, 2023). The 2022 APS rate case is pending before the Commission, and the parties expect the case to be resolved as soon as January 2024.

**DISCUSSION**

**¶12**    The Tribe challenges the transition assistance the Commission ordered in the Decision and argues the Commission erred by denying the Tribe's rehearing request. The Commission and APS contend we lack jurisdiction to consider the Tribe's appeal because the case is not ripe. The Tribe argues we have jurisdiction because the Decision is final.

**¶13**    Both the Commission and APS argue there "is not [a] final determination by the Commission regarding [transition assistance]" because the Commission may order additional transition assistance through the generic docket. In the Decision, the Commission explicitly left open this possibility, stating that the approved assistance "shall not be interpreted as establishing the entirety of APS's [transition] assistance obligation to . . . the Tribe." And the Commission specified the generic docket as the "appropriate venue to flesh out additional information concerning APS's and other utilities' equitable obligations to coal-impacted communities." Although the Commission closed the generic docket without deciding whether to award additional transition assistance, APS and the Commission contend that the Commission is likely to determine the Tribe's full transition assistance entitlement at the conclusion of the 2022 APS rate case.

**¶14**    We will not "review Commission actions where the Commission has not made a final determination." *Kunkle Transfer & Storage Co. v. Superior Court*, 22 Ariz. App. 315, 318 (1974) (accepting special action jurisdiction to resolve the court's jurisdiction over ongoing Commission matters). We will not "render[] a judgment or opinion on a situation that may never occur." *U.S. W. Commc'ns, Inc. v. Ariz. Corp. Comm'n*, 198 Ariz. 208, 214, ¶ 15 (App. 2000), *vacated on other grounds*, 201 Ariz. 242 (2001). And "[i]f a party has not exhausted its administrative remedies, the controversy is not ripe for review." *U.S. W. Commc'ns, Inc. v. Ariz. Corp. Comm'n*, 197 Ariz. 16, 19, ¶ 9 (App. 1999).

**¶15**    The Commission and APS argue that because the Commission left the issue of transition assistance open for consideration, there is no final order or decision on that issue from which the Tribe could

apply for rehearing. And an application for rehearing from a final decision is an administrative remedy which must be exhausted as a prerequisite for judicial review. *See* A.R.S. § 40-253(A), (B); *State ex rel. Church v. Ariz. Corp. Comm'n*, 94 Ariz. 107, 110 (1963); *Woodward v. Ariz. Corp. Comm'n*, 1 CA-CC 17-0003, 2018 WL 6498615, at *2, ¶ 8 (Ariz. App. Dec. 11, 2018) (mem. decision) ("We review only those issues that were fairly presented to the Commission in a timely application for rehearing."). A "final order or decision" plainly implies a ruling that disposes of the issues leaving the litigant no remaining avenue of relief. *See* A.R.S. § 40-253(A).

**¶16**		We agree with the Commission that "there is no doubt that [the Decision] is a final, appealable order." And we agree that, despite the otherwise final nature of the Decision, the Commission explicitly left open the question of how much transition assistance APS must provide the Tribe. Our evaluation of the Commission's award must be tethered to the complete award.

**¶17**		The Tribe argues that each Commission decision relating to transition assistance should be evaluated on its own merits. The Tribe acknowledges the 2022 APS rate case may result in additional transition assistance, but still maintains that future Commission decisions have no bearing on whether the award in the Decision is arbitrary and capricious, discriminatory, or a deviation from an established policy. The Tribe has intervened in APS's 2022 rate case in which APS has proposed additional transition assistance, which amounts to recognition that it has not yet exhausted administrative remedies related to the transition assistance award. *See Church*, 94 Ariz. at 110. We cannot evaluate the merits of the Tribe's arguments until the Commission finally resolves the transition assistance issue and the Tribe presents its challenges to the final decision in a timely application for rehearing. *See* A.R.S. § 40-253(A), (B); *Woodward*, 1 CA-CC 17-0003, at *2, ¶ 8. In the absence of such final resolution, the transition assistance issue is not ripe. *See U.S. W. Commc'ns, Inc.*, 197 Ariz. at 19, ¶ 9.

**¶18**		Upon final resolution of the Tribe's transition assistance entitlement, the Tribe can challenge the entire award, including the amount ordered in the Decision. Indeed, both the Commission and APS agreed to this during oral argument before this Court.

**¶19**		The Tribe expressed concern that if this Court concludes it does not have jurisdiction in this appeal, the Commission could leave the transition assistance issue open in perpetuity, evading judicial review. But as APS responded, the Tribe could appeal from a future Commission

decision to continue leaving transition assistance claims unresolved on the basis that the decision to leave the issue open was arbitrary and capricious. *See* A.R.S. § 40-253(A), (B). The Tribe did not raise that argument in this appeal, so we do not address the issue here, nor do we address the merits of such an argument in a future appeal.

¶20        In its Decision, the Commission designated the generic docket as the appropriate venue to gather evidence and make a full determination on the Tribe's transition assistance award. With that docket since closed, the Commission is now weighing that evidence in APS's 2022 rate case to decide whether the Tribe should receive additional transition assistance. The order of transition assistance in the Decision from which the Tribe appeals is not a "final determination" by the Commission. *See Kunkle*, 22 Ariz. App. at 318. We do not have jurisdiction over the Tribe's appeal.

## CONCLUSION

¶21        Because this Court does not have jurisdiction, we dismiss the Tribe's appeal.



AMY M. WOOD • Clerk of the Court
FILED:    TM